SEALED    04-1682-CPS

## Affidavit of Special Agent Michael P. Curran

I, Michael P. Curran, being duly sworn, do hereby depose and state the following:

1.    I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives of the United States Department of Justice ("ATF") and have been so employed since September 1998. Previously, I was employed as a Special Agent with the U.S. Immigration and Naturalization Service for approximately two years. My responsibilities include investigating and enforcing the federal firearms laws. I attended the Criminal Investigator Training Program, at the Federal Law Enforcement Training Center (FLETC), in Glynco, Georgia, from February 1998 to April 1998, where I received training and instruction as a Special Agent, including firearms training, the execution of search and arrest warrants, investigative techniques, and legal instruction which covered Fourth Amendment searches and seizures. Subsequently, from March 1999 to July 1999, I attended specialized training known as New Professional Training ("NPT") through ATF, at FLETC, where I received instruction in firearms technology and identification, firearms trafficking, explosives, and arson. During my career as a Special Agent, I have participated in the execution of numerous arrest warrants and search warrants.

SEALED

1

DOCKETED



2.    From my training and experience, I know it is a violation of Title 18, United States Code, Section 922(g)(1) for any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year to possess or receive any firearm which has been shipped or transported in interstate or foreign commerce.

3.    The information contained in this affidavit is based on my personal involvement in this investigation, my training and experience, my review of documents, and information provided to me by other law enforcement officers. This affidavit does not contain all of the information that I possess about this investigation, but only that which is necessary to support the issuance of a criminal complaint.

4.    This affidavit is submitted in support of a criminal complaint charging Louis E. HANLEY, Sr., date of birth July 22, 1950, social security number 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, residing at 1217 South High Street in Bridgton, Maine, with a violation of Title 18, United States Code, Section 922(g)(1).

5.    From in or about October 19, 1992 to in or about December 12, 2003, Nancy Hanley was a resident of 144A Dorchester Street, in Worcester, MA, a public housing unit which is maintained by the Worcester Housing Authority ("WHA").  In or about December 2003, the WHA evicted Nancy Hanley from the

2

residence since her son, Louis E. Hanley, and two others, resided at the 144A Dorchester Street, without permission to do so.  On December 17, 2003, as part of a routine, post-eviction inspection of the premises, which includes changing the locks, WHA employees located certain property within the premises, including: a Browning shotgun, model Light 12, 12 gauge caliber, serial number 5G83967; a spare barrel for the shotgun; and a pellet gun (which is not, based on my preliminary inspection, a firearm).  The Browning shotgun was found in a closet.  The WHA employees who recovered the property, contrary to WHA policy, kept the property for themselves.  One WHA employee took the shotgun and spare barrel and transferred them to a third-party.  Another WHA employee took the pellet gun and kept it in his work locker.

    6.   Shortly after the eviction, at some point between December 17 and December 30, 2003, HANLEY called the WHA and reported that his shotgun was left at 144A Dorchester Street, and HANLEY wanted it back.  On or about December 30, 2003, Amanda Brady ("Brady"), of the WHA, contacted HANLEY.  HANLEY told Brady that he had left the shotgun in a living room closet.  HANLEY said that he could be contacted at a telephone number with a Maine area code.

7. Subsequent investigation by the WHA, in an effort to track down the property, disclosed that two WHA employees removed the shotgun, barrel, and pellet gun from the premises. On or about December 31, 2003, Angel Rosario, WHA Administrator of Public Safety, interviewed both employees, who admitted that they removed the weapons from the premises, contrary to WHA policy. Both WHA employees surrendered the property.

8. On January 5, 2004, Housing and Urban Development Office of the Inspector General (HUD OIG) Special Agent Gene Westerlind took custody of the Browning shotgun, spare barrel and pellet gun. Westerlind contacted me and notified me of the situation.

9. On January 8, 2004, HANLEY, again, called the WHA and spoke with Angel Rosario. HANLEY provided a date of birth of July 22, 1950 and social security number of 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 to Rosario. HANLEY again stated that he wanted his shotgun back. Rosario stated that HANLEY would be contacted when the firearm could be released.

10. On January 23, 2004, HUD OIG Special Agent Gene Westerlind made a consensually monitored telephone call to the Maine telephone number provided by HANLEY. Westerlind identified himself as "Gene from Worcester Housing." Westerlind asked for

4

Louis HANLEY, who replied "speaking."  Westerlind told HANLEY
that he would like to set up an appointment for HANLEY to pick up
his property. Westerlind asked HANLEY what property he would be
picking up, and HANLEY replied, "my shotgun and pellet gun."
HANLEY also stated that he would be coming in from Maine.
Westerlind provided HANLEY with directions to 69 Tacoma Street,
in Worcester, MA, which is an office of the WHA.

11.   On February 3, 2004, HANLEY called the WHA, which
transferred the telephone call to Special Agent Gene Westerlind.
This call was consensually monitored and recorded. HANLEY and
Westerlind agreed upon a time of 2:00 PM later that day for
HANLEY to meet with Westerlind. Westerlind, again, provided
directions to 69 Tacoma Street, in Worcester, MA.

12.   Later on February 3, 2004, an office at 69 Tacoma was
outfitted with a hidden video recorder. Special Agent Westerlind
was outfitted with a hidden recorder and a transmitter, as well.
Shortly before 2:00 PM, on February 3, 2004, a vehicle with Maine
license plates pulled up outside 69 Tacoma in Worcester, MA. This
vehicle was registered in HANLEY's name. Through WHA surveillance
cameras, I observed a male fitting HANLEY's description exiting
that vehicle.

13.   A few minutes later, HANLEY entered 69 Tacoma Street
and was sent to meet Special Agent Gene Westerlind in an office
in that building. Westerlind, again, assumed the role of a WHA
employee. A transcript of this meeting is attached hereto as
Exhibit A and incorporated herein. The meeting was video and
audiotaped. Westerlind accepted a Maine Driver's License from
HANLEY for the purposes of identification.  HANLEY also signed a
receipt for the Browning shotgun, extra barrel, and pellet gun.
Westerlind took the Driver's License that HANLEY presented for
identification and photocopied it.

14.   During this meeting with Westerlind, Westerlind
displayed the shotgun to HANLEY.  HANLEY took the Browning
shotgun into his hands and identified it as his own.  After
holding the shotgun and acknowledging that it was his own, HANLEY
placed the weapon down on the table in front of him, well within
reach.

15.   At the conclusion of the meeting, I, along with several
other agents entered the room and identified ourselves as law
enforcement agents.  For the safety of the agents, I placed
handcuffs on HANLEY, advised him of his Miranda rights, and
conducted a pat frisk, which turned up no weapons.  Following the
pat frisk, HANLEY stated that he understood these rights and

agreed to talk, at which point I removed the handcuffs. HANLEY
told me that the shotgun which Special Agent Westerlind showed
him, and he had just held in his hands, was the same one he has
possessed since he was approximately 16 years old and the one
that HANLEY left at 144A Dorchester Street, in Worcester, MA.

16. I explained to HANLEY that he was not under arrest. I
asked HANLEY if he would voluntarily agree to meet me at the ATF
office in Worcester, and HANLEY stated that he would. HANLEY left
in his own vehicle. A short while later, HANLEY appeared at the
office.

17. At the ATF office, I, again, advised HANLEY of his
Miranda rights. HANLEY stated that he understood these rights and
agreed to waive them. I told HANLEY that he was not under arrest
and free to leave at any time. HANLEY provided me with a written
statement regarding his possession of the Browning shotgun. A
copy of that statement is attached hereto as Exhibit B and
incorporated herein. HANLEY told me that he had possessed the
Browning shotgun for most of his life, and has sometimes stored
it at his mother's house. HANLEY stated that he lived with his
mother from January until June 2003, at 144A Dorchester Street,
in Worcester, MA. When HANLEY lived at 144A Dorchester Street, he
stored the Browning shotgun at that residence. HANLEY also

7

admitted to three convictions: two for Domestic Assault and Battery in Worcester District Court; and one for Conspiracy to Distribute Cocaine in Worcester Superior Court.

18. Special Agent Westerlind obtained WHA documents relating to the occupancy of 144A Dorchester Street in Worcester. WHA records indicate that 144A Dorchester was occupied by Nancy Hanley (Louis HANLEY's mother) until December 2003. The documents also reflect that in May 2003, Louis HANLEY Sr., son of Nancy Hanley, admitted to a WHA Director of Management that he was living at 144A Dorchester Street, but would be leaving on June 1, 2003. The file also reflects numerous other incidents, which indicated to WHA that HANLEY resided at 144A Dorchester Street.

19. I obtained records from Worcester District Court regarding HANLEY. Worcester District Court Docket number 0062CR005508 shows that Louis HANLEY, date of birth July 22, 1950 was convicted of Massachusetts General Law Chapter 265, Section 13A, Domestic Assault and Battery in July 2001. This offense carries a potential punishment of up to 2 ½ years imprisonment in a house of correction. Worcester District Court Docket number 9962CR006002 shows that Louis HANLEY, date of birth July 22, 1950, was convicted of Massachusetts General Law Chapter 265, Section 15A For Domestic Assault and Battery with a Dangerous

8

Weapon in February 2000. This offense carries a potential penalty of up to 10 years imprisonment in a State Prison.

20.   I obtained records from Worcester Superior Court regarding HANLEY. Worcester Superior Court Docket number 86-113585 shows that Louis HANLEY was convicted of Massachusetts General Laws Chapter 94C, Section 40, Conspiracy to Unlawfully Distribute a Controlled Substance, to wit, Cocaine. This charge carries a potential penalty of up to 10 years imprisonment in a State Prison.

21.   On February 13, 2004, I spoke with a representative from the Massachusetts Governor's Council on Pardons. The representative informed me that they had no record of Louis HANLEY, date of birth July 22, 1950, filing for or receiving a pardon from the Commonwealth of Massachusetts.

22.   I provided a description of the Browning shotgun, model Light 12, 12 gauge caliber, serial number 5G83967, to ATF Special Agent Kurt Wheeler, who has received specialized training in the interstate nexus of firearms, regarding firearms identification and origin. Wheeler told me that the Browning shotgun is not manufactured in Massachusetts, and has therefore traveled in interstate and foreign commerce into Massachusetts.

23.    Based on the above, I believe that probable cause exists to conclude that from on or about January 2003 until June 2003, and on February 3, 2004, Louis HANLEY did possess, in Worcester, Massachusetts, subsequent to a conviction of a crime punishable by imprisonment for a term exceeding one year, a firearm which has been shipped or transported in interstate or foreign commerce to wit: a Browning shotgun, model Light 12, 12 gauge caliber, serial number 5G83967, in violation of Title 18, United States Code, Section 922(g)(1).

_____
Michael P. Curran, Special Agent
U.S. Bureau of Alcohol, Tobacco,
Firearms and Explosives

Sworn and subscribed to me this 25th day of February, 2004.

_____
CHARLES B. SWARTWOOD, III
United States Magistrate Judge

10



Draft Transcript of February 3, 2004 meeting between Undercover agent Gene

Westerlind and Louis HANLEY. Meeting occurred at 69 Tacoma Street in Worcester,

MA.


Phone rings

WESTERLIND: Hello? Yes, Oh, OK, send them in, Thanks.

WESTERLIND: Hi

HANLEY: Gene?

WESTERLIND: Yeah, How are you doing? Good. And you are?

HANLEY: Its my Wife

BRIDGET HANLEY: His wife

WESTERLIND: You mind, ah, waiting out in the lobby? It'll only be a minute. Have a

seat. First thing I've got to do, is ah, positively identify you, since it's ah, you know what

we're dealing with.

HANLEY: Alright

WESTERLIND: Heading back up North today?

HANLEY: Yeah.

WESTERLIND:  I was up in Bridgton once upon a time.

HANLEY: Yeah.

WESTERLIND: Moose Lake up there,

HANLEY: Ah.

WESTERLIND: or Moose Pond?

HANLEY:  Long Lake? And Moose Pond, I haven't heard of that one.

1

WESTERLIND: Ah.

HANLEY: I've only been up there since June, so.

WESTERLIND: Yeah. It's quite a hike, as I recall. I haven't been up into Maine in ages.

HANLEY: Uh-huh, it's a haul.

WESTERLIND: This'll be good to get this taken care of and get it out of here.

HANLEY: Yeah

WESTERLIND: It's been a pain in the rear end. Boss has been all, ah, shook up that we have it, so. Mind if I take a copy of that?

HANLEY: Sure

WESTERLIND: Alright.

WESTERLIND: Alright, and then I have to establish what you're here for, even though we've talked.

HANLEY: OK

WESTERLIND: What are you coming down for?

HANLEY: To pick up my gun.

WESTERLIND: OK, what is it?

HANLEY: Shotgun

WESTERLIND: Can you describe it to me?

HANLEY: A Browning, Browning, golden trigger

WESTERLIND: OK

HANLEY: Semi- automatic.

WESTERLIND: Alright. What caliber is it?

HANLEY: 12 gauge

2

WESTERLIND: Alright, and what else are you looking for?

HANLEY: A BB gun.

WESTERLIND: Ok, anything else?

HANLEY: No, that's it?

WESTERLIND: And where was that left?

HANLEY: In the closet.

WESTERLIND: Of?

HANLEY: 144 Dorchester Street,

WESTERLIND: OK

HANLEY: Apartment A.

WESTERLIND: Alright, and did you live there?

HANLEY: I was staying there for a while, yeah.

WESTERLIND: OK, when was that?

HANLEY: Ah, since, well I left there in June.

WESTERLIND: OK

HANLEY: So.

WESTERLIND: Alright, so it's a Browning gold trigger

HANLEY: Yeah

WESTERLIND: Ah,12 gauge shotgun, and what's the pellet gun look like?

HANLEY: What's it called? I don't know, just a nice little pellet gun pistol.

WESTERLIND: OK, alright, just got to make sure you're who you say you are and we are giving you what's yours.

HANLEY: I hear you.

3

WESTERLIND: So that, that is yours.

HANLEY: Yes.

WESTERLIND: OK, I'll give you the pistol, and if you can identify that. Is that yours?

HANLEY: Yep.

WESTERLIND: OK, and could you read the serial number to me.

HANLEY: No, I can't even see it. Nah, I have to get my glasses.

WESTERLIND: OK, and, the shotgun, does that look like your shotgun?

HANLEY: Yep. That's not the trigger lock I had on it though.

WESTERLIND: Um, was there a trigger lock on it?

HANLEY: Yeah.

WESTERLIND: Yeah, OK. It didn't have one when, when I got it,

HANLEY: Uh-huh

WESTERLIND: so I put one on it.

HANLEY: It had one on it.

WESTERLIND: OK. Alright, well, that's yours. You want to verify the serial number on there?

HANLEY: I can't see it. I don't have glasses or nothing but that's it. Alright, there was also another barrel?

WESTERLIND: OK, I've got the barrel. I just, I'm gonna need to verify the serial number on that. That's ah, that's part of this I guess? (unintelligible) Is that the barrel?

HANLEY: Yep

WESTERLIND: OK, let me make sure I've got the serial number on this, Looks like ah 5G83967. Does that sound right?

4

HANLEY: I don't know.

WESTERLIND: OK, alright let me ah, get you your receipt for this. I wrote your information on the back of there, I've got a copy of your license. That's just so later on you can't say that we didn't give you your shotgun back. Now I'm going to sign this.

HANLEY: Sign all of this twice?

WESTERLIND: And ah?

HANLEY: Sure this goes to here?

WESTERLIND: Yeah, I think it goes on the bottom.

HANLEY: Oh, right here? (unintelligible)

WESTERLIND: Alright, and ah, I just got to grab the keys for this.

HANLEY: OK

WESTERLIND: OK

HANLEY: (unintelligible) can't transport that without the trigger lock, right (unintelligible)?

WESTERLIND: Right, in Massachusetts you can't transport that without the trigger lock.

5



# DEPARTMENT OF THE TREASURY
## BUREAU OF ALCOHOL TOBACCO AND FIREARMS
# WAIVER OF RIGHT TO REMAIN SILENT AND OF RIGHT TO ADVICE OF COUNSEL

## STATEMENT OF RIGHTS

*L H* You must understand your rights before we ask you any questions.

*L H* You have the right to remain silent.

*L H* Anything you say can be used against you in court, or other proceedings.

*L H* You have the right to talk to a lawyer for advice before we question you and to have him/her with you during questioning.

*L H* If you cannot afford a lawyer and want one, a lawyer will be appointed for you by the court. If you decide to answer questions now without a lawyer present, you will still have the right to stop the questioning at any time. You also have the right to stop the questioning at any time until you talk to a lawyer.

I have read this statement of my rights and it has been read to me, and I understand what my rights are.

*L H*

Date _2/3/04_     Signature _Sun E Helroy_

*L H*

Time _3 01. RM_

## WAIVER

I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have made to me and no pressure or force of any kind has been used against me. I hereby voluntarily and intentionally waive my rights, and I am willing to make a statement and answer questions.

Date _2/3/04_     Signature _Sun E Helroy_

Time _3 01, PM_

## CERTIFICATION

I hereby certify that the foregoing Waiver of Right to Remain Silent and of Right to Advice of Counsel were read by me to the above signatory, and that he/she also read it and has affixed his/her signature hereto in my presence.

_____     _____
Witness                      Signature

_____
Witness

| DEPARTMENT OF THE TREASURY — BUREAU OF ALCOHOL, TOBACCO AND FIREARMS<br>AFFIDAVIT | PAGE ___1__ OF __2__ PAGES |
|---|---|

I, LOUIS E HANLEY, SR. DOB 7/22/50, SSN 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 _____, state that

I reside at 1217 SOUTH HIGH STREET, BRIDGTON, ME. I HAVE LIVED IN BRIDGTON, ME SINCE JUNE, 2003 WITH MY WIFE BRIDGET HANLEY (MULRINEN). PRIOR TO THIS, I LIVED AT 144A DORCHESTER ST. IN WORCESTER FROM APPROXIMATELY JANUARY UNTIL JUNE 2003, WITH MY MOTHER NANCY HANLEY, MY SON LOUIS HANLEY, JR, AND HIS GIRLFRIEND TASHA. THIS WAS A ONE BEDROOM APARTMENT AND IS PUBLIC WORCESTER HOUSING. MY MOTHER WAS THE ONLY PERSON ON THE LEASE, BUT THE TELEPHONE WAS IN MY NAME AT ONE TIME. IN APPROXIMATELY DECEMBER 2003, MY MOTHER NANCY HANLEY WAS EVICTED BECAUSE MY SON AND HIS GIRLFRIEND WERE STILL LIVING THERE ILLEGALLY. WHEN MY MOTHER WAS EVICTED, ~~MY~~ A FAMILY MEMBER REMOVED OUR BELONGINGS. THE FAMILY MEMBER THAT CLEANED THE HOUSE FAILED TO REMOVE MY BROWNING 12 GAUGE SHOTGUN, AN EXTRA BARREL, AND MY SON'S PELLET GUN. I LEFT THE SHOTGUN IN THE LIVING ROOM CLOSET, AND THE SPARE BARREL WAS IN MY MOTHER'S CLOSET. I DID NOT TAKE THE BROWNING SHOTGUN TO MAINE WITH ME WHEN I MOVED BECAUSE I HAD FORGOTTEN ABOUT

I have read the foregoing statement consisting of ___2___ pages, each of which I have signed. I fully understand this statement and I declare, certify, verify and/or state under penalty of perjury that the foregoing is true and correct. I made the corrections shown and placed my initials opposite each. I made this statement freely and voluntarily without any threats or rewards, or promises of reward having been made to me in return for it. Executed on FEBRUARY 3, TO 2004

SIGNATURE OF AFFIANT
_Lou E Hanley_

SUBSCRIBED AND SWORN TO BEFORE ME THIS __3RD__
DAY OF FEBRUARY , TO 2004
AT ATF WORCESTER

SIGNATURE
_Michael Cee_
TITLE
SPECIAL AGENT

WITNESS
Gene E. Westerlind
SIGNATURE
_Gene E West_
TITLE
Special Agent  HUD-OIG

ATF F 5000.1 (12-83)

DEPARTMENT OF THE TREASURY – BUREAU OF ALCOHOL, TOBACCO AND FIREARMS

# AFFIDAVIT
### (CONTINUATION SHEET)

PAGE __2__ OF __2__ PAGES

IT. THE SHOTGUN HAD A TRIGGER LOCK ON IT. I HAD A TRIGGER LOCK ON IT BECAUSE I KNOW THAT IT IS A LAW TO HAVE TRIGGER LOCKS ON GUNS. MY SON TOLD ME AFTER THE EVICTION, THAT HE LEFT THE SHOTGUN BEHIND. I BEGAN TO CALL THE WORCESTER HOUSING AUTHORITY TO GET MY GUN BACK. I ORIGINALLY PURCHASED THE SHOTGUN, USED, IN APPROXIMATELY 1967 IN SHREWSBURY AT A GUN DEALER FOR ABOUT $150. I HAVE HAD THE SHOTGUN SINCE THEN, BUT AT TIMES IT HAS BEEN AT MY MOTHER'S HOUSE. WHEN I PURCHASED THIS, I HAD A MASSACHUSETTS FID CARD. SINCE THAT TIME I HAVE BEEN CONVICTED IN WORCESTER SUPERIOR COURT FOR CONSPIRACY TO DISTRIBUTE COCAINE AND TWO DOMESTIC ASSAULT AND BATTERIES IN WORCESTER DISTRICT COURT. I USED THE SHOTGUN FOR HUNTING ON MANY OCCASIONS, AND TO MY KNOWLEDGE IT WORKS FINE. I NEVER NOTIFIED THE WORCESTER POLICE THAT I MOVED TO CHANGE MY ADDRESS. I WANTED THE SHOTGUN BACK SO I COULD SELL IT AND MAKE SOME MONEY. I WAS READ MY RIGHTS BEFORE I GAVE THIS STATEMENT TWO TIMES BY ATF SPECIAL AGENTS. NO PROMISES HAVE BEEN MADE TO ME, AND I UNDERSTAND THAT I MAY BE IN LEGAL TROUBLE. I GIVE THIS STATEMENT OF MY OWN FREE WILL, KNOW WHAT I AM DOING, AND AM NOT UNDER THE INFLUENCE OF DRUGS OR ALCOHOL.

SIGNATURE OF AFFIANT

DATE 2/3/04

ATF F 5000.2 (6-74)

3:52 PM STATEMENT ENDED