UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
v. ) Cr. No. 04-40008-FDS
LOUIS E. HANLEY, SR., )
Defendant. )

**DEFENDANT'S EMERGENCY MOTION FOR DEPOSITION AND MOTION *EX PARTE* FOR FUNDING PURSUANT TO THE CRIMINAL JUSTICE ACT**

Defendant Louis E. Hanley, Sr. ("Mr. Hanley") respectfully requests that the Court authorize the videotaped deposition of his mother, Nancy Hanley ("Mrs. Hanley"), within the next week, pursuant to Fed. R. Crim. P. 15. Mr. Hanley also moves *ex parte* for authorization for funding for Mrs. Hanley's videotaped deposition pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A(e).

As grounds therefore, Mr. Hanley states that Mrs. Hanley's testimony is crucial to his defense in that the Government contends Mr. Hanley was in possession of a firearm between January and June of 2003, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1), when in fact such firearm had been abandoned and was collecting dust in a closet at Mrs. Hanley's apartment during that period. For this reason, Mr. Hanley had expected to call Mrs. Hanley as a witness at trial, however she was diagnosed with terminal uterine cancer on or about July 10, 2005 and, without surgery and/or chemotherapy (which she has declined to undergo due to her advanced age), she is now not expected to survive more than another several weeks. (*See* the July 12, 2005 physician's report attached hereto at Exhibit A.) Mrs. Hanley's condition is presently such that

she would be able to sit for a deposition sometime during the next week, but it is highly unlikely that she would be available to testify as a witness at trial.

Were Mr. Hanley not indigent, he would pay for the costs associated with Mrs. Hanley's videotaped deposition with his own funds. However, he is compelled by his financial circumstances to request that this Court authorize such funding pursuant to the Criminal Justice Act, which funding is not expected to exceed the $1,000 maximum as set forth in 18 U.S.C. § 3006A(e)(3). Mr. Hanley makes this portion of the herein motion *ex parte* pursuant to 18 U.S.C. § 3006A(e)(1).

WHEREFORE, Mr. Hanley respectfully requests that the Court authorize the videotaped deposition of Mrs. Hanley at a time within the next week to be mutually agreed upon with the United States Attorney. Mr. Hanley also requests authorization for funding for Mrs. Hanley's deposition pursuant to the Criminal Justice Act.

Respectfully submitted,

LOUIS E. HANLEY, SR.

By his attorneys,

/s/ David M. Burkoff
Howard M. Cooper (BBO# 543842)
David M. Burkoff (BBO# 657447)
Todd & Weld LLP
28 State Street, 31st Floor
Boston, MA 02109
(617) 720-2626

Dated: July 21, 2005

# **Exhibit A**

**Central Maine OB/Gyn (Clinical Department of CMMC)**
12 High Street Suite 200 Lewiston, ME 04240
207 795-5770 Fax: 207 795-5779

July 12, 2005
Page 1
Chart Document

NANCY [redacted] (207) [redacted]
Female [redacted] (02)

**07/10/2005 - Hospital Discharge Summary**
**Provider: Jennifer Weiner-Smith MD**
**Location of Care: All**

Patient: NANCY HANLEY
Note: All result statuses are Final unless otherwise noted.

Tests: (1) (HIM)
| R CMMF

- CT scan orig done at Bridgton
- Films at CMMC as of 7/14/05

DATE OF ADMISSION: 07/05/05
DATE OF DISCHARGE: 07/10/05

ADMITTING DIAGNOSES:
1. Vaginal bleeding.
2. Anemia.

DISCHARGE DIAGNOSES:
1. Uterine mass.
2. Anemia.
3. Vaginal bleeding.
4. Endometrial biopsy pending at the time of this dictation.

MEDICATIONS UPON DISCHARGE:
1. Imdur 120 mg one tab each morning.
2. Toprol XL 200 mg once a day.
3. Navacor 40 mg once a day with dinner.
4. Megace 200 mg one teaspoon each day.
5. Nystatin powder apply to abdomen three times a day.
6. Baby aspirin 81 mg one a day.
7. Colace or generic one each day.

HOSPITAL COURSE: The patient was admitted to the hospital on 07/05/05 as a transfer from Bridgton Hospital as they felt they could not take care of such a high-risk patient at their institution. I received the patient in transport from Dr. Davis at Bridgton Hospital for evaluation of vaginal bleeding. The patient had received four units of packed cells at their institution and was transferred in stable condition. On the day of admission, the patient was barely bleeding and was seen by the hospitalist service for evaluation of her multiple medical problems. EKG was ordered at that time and as she was hyponatremic, her Lasix was held and she was given gentle fluids of normal saline. The next day, the patient's grandson arrived who was the patient's guardian and we discussed the treatment of her problem and that an endometrial biopsy would be needed. An office endometrial biopsy was performed by Moira Shanahan, M.D.with no complications and sent off to pathology for permanent section. A CT scan was reviewed with Russell V. Radcliffe, M.D. that day which showed an enlarged uterus with no adenopathy, normal-appearing ovaries with a question of a lung nodule, and an IVC filter in place. On 07/08/05, the biopsy returned as most likely adenocarcinoma of the endometrium and slides were sent out for a second opinion at Mass General Hospital. The results were discussed with the patient's grandson and they discussed surgery versus x-ray therapy. As the patient is 85 years old, the patient herself was thinking that she really did not want surgery. The case was

**Central Maine OB/Gyn (Clinical Department of CMMC)**
12 High Street Suite 200 Lewiston, ME 04240
207 795-5770 Fax: 207 795-5778

July 12, 2005
Page 2
Chart Document

NANCY M HANKE[illegible]
[illegible] MEDICARE (02)

also discussed with Donald W. Wiper, M.D. at Maine Medical Center and the patient was then started on Megace at that time to try to control bleeding until her options were evaluated. The patient did receive a unit of packed red cells during this hospitalization for continued anemia and at the time of discharge, her H and H was quite stable. On 07/09/05, the grandson was again seen with the patient. The patient was up and ambulating. She was up to the bathroom and in the hall with a walker, very alert, and still with the understanding that she did not want to have surgery. She was able to void with her Foley removed at that time. She has continued on Megace since it was started and her bleeding has been well controlled. At the time of dictation, the patient has only had very minimal spotting overnight. At the time of discharge, the patient and her grandson understand the usual therapy with staging exploratory laparotomy but the patient has cleared voiced that she does not wish to undergo surgery at the age of 89. We have also discussed x-ray therapy for palliation and control of her bleeding and the patient will be made an appointment with radiation oncology this week to discuss this option. We will also make an appointment with GYN oncology in Portland to discuss her options as well with Dr. Donald Wiper. The patient will be discharged to home with her grandson and we will be contacting her this week with these appointments. They will call with any further problems or questions and understand to return to the emergency room for heavy vaginal bleeding.

Jennifer Weiner-smith, M.D.
Electronically Signed
07/11/2005 15:38:21
By JENNIFER WEINER-SMITH, M.D.

DD: 07/10/05, 10:07:17, 05304
TD: 07/11/05, 12:03:54, rb 459314
cc: JENNIFER WEINER-SMITH, M.D.

Note: An exclamation mark (!) indicates a result that was not dispersed into the flowsheet.
Document Creation Date: 07/11/2005 4:09 PM

---

(1) Order result status: Final
Collection or observation date-time: 07/10/2005
Requested date-time: 07/10/2005 10:07
Receipt date-time:
Reported date-time:
Referring Physician:
Ordering Physician: JENNIFER WEINER-SMITH (WEJ055)
Specimen Source:
Source: Mediscribe
Filler Order Number: CMMHM00050711DSrb05.JW
Lab site:

Signed by Jennifer Weiner-Smith MD on 07/11/2005 at 4:38 PM