UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| V.                        ) | Cr. No. 04-40008-FDS |
| ) | |
| LOUIS E. HANLEY, SR.,     ) | |
| ) | |
| Defendant                 ) | |

## GOVERNMENT'S RESPONSE IN OPPOSITION TO EMERGENCY MOTION FOR DEPOSITION

The United States of America, by its attorneys, Michael J. Sullivan, U.S. Attorney, and John M. Hodgens, Jr., Assistant U.S. Attorney, hereby opposes Defendant's emergency motion for deposition.

### Background

On July 21, 2005, Defendant moved on an emergency basis to take the deposition of Nancy Hanley, his mother. Def. Motion, p. 1. Defendant further moved that the deposition be taken "within next week." Def. Motion, p. 1. No trial date has been set in this matter. A status conference is scheduled for July 22, 2005.

### The Law

"Although depositions 'are disfavored in criminal cases,' United States v. Hajbeh, 284 F.Supp. 2d 380, 382 (D. E.D. VA 2003), Fed. R. Crim. P. 15(a)(1) provides, in pertinent part, that "[a] party may move that a prospective witness be deposed in order to preserve testimony for trial. The court may grant the motion because of exceptional circumstances and in the interest of

justice." The defendant bears the burden of showing exceptional circumstances. United States v. Drogoul, 1 F.3d 1546, 1552 (11th Cir. 1993)(internal citation omitted)("The burden is on the moving party to establish exceptional circumstances justifying the taking of depositions."). Whether or not a deposition is to be taken is committed to the broad discretion of the district court. Id. (internal citation omitted) ("Whether to authorize depositions is a decision committed to the discretion of the district court which will be disturbed only for an abuse of discretion."); and United States v. Dillman, 15 F.3d 384, 389 (5th Cir.), cert. denied, 513 U.S. 866 (1994)(internal citation omitted). ("The word 'may' signifies that the district court retains broad discretion in granting a Rule 15(a) motion and that the court should review these motions on a case-by-case basis, examining whether the particular characteristics of each case constitute 'exceptional circumstances.'").

The requirement of 'exceptional circumstances' "bespeak that only in extraordinary cases will depositions be compelled." Id.

> While the Rule neither defines nor elucidates the 'exceptional circumstances' and 'interest of justice' standards, some guidance in this regard is found in the Advisory Committee's note, which states that a court may permit a party to depose a witness in a criminal case if (a) the witness will be unavailable to testify at trial, (b) the testimony is material to the moving party's case, and (c)

2

the testimony is necessary to avoid an injustice. This guidance, while helpful, is not sufficiently particularized to be dispositive of specific cases. For example, the guidance leaves unanswered whether exculpatory evidence that is cumulative or merely corroborative of other trial evidence is sufficient to trigger the operation of the Rule. Also unanswered is the question of what circumstances constitute a qualifying unavailability of a witness. Nor are these questions definitively answered in the caselaw. Authority on the application of Rule 15(a) and the "exceptional circumstances" standard is sparse. Authority from elsewhere is generally consistent with the guidance in the Advisory Committee's note, but varies somewhat in detail. Courts typically require a party seeking a deposition to establish both that the witness's testimony is material and that the witness will likely be unavailable to testify at trial. The Second and Tenth Circuits also require the moving party to show that denying the requested deposition will result in a failure of justice, but then provide little explanation as to what a movant must show to establish this element of the test. The Eleventh Circuit weighs the moving party's showing of materiality and unavailability against countervailing considerations, including the likelihood that the testimony will be admissible at trial and whether a deposition would cause excessive delay. This balancing test is designed to ensure that courts permit Rule 15(a) depositions only in rare instances, a result the language of the Rule clearly intended.

United States v. Hajbeh, 284 F.Supp. 2d 380, 382 (D.C. E.D. VA 2003)(internal citations omitted).

In determining whether 'exceptional circumstances' exist, courts have looked to two "critical factors" including "(1) the

materiality of the testimony; and (2) the unavailability of the witness to testify at trial. Moreover, there is typically some showing, beyond "unsubstantiated speculation," that the evidence exculpates the defendant." United States v. Kelly, 36 F.3d 1118, 1125 (D.C. Cir. 1994); see also United States v. Thomas, 62 F.3d 1332, 1340-1(11th Cir. 1995), cert. denied, 516 U.S. 1166 (1996)("[W]e have held that in analyzing whether the circumstances are sufficiently exceptional, we consider whether:(1) the witness is unavailable; (2) injustice will otherwise result without the material testimony that the deposition could provide; and (3) countervailing factors would make the deposition unjust to the nonmoving party.").

"Whatever test is adopted, analysis properly begins with the question whether the proffered testimony is material. Absent materiality, Rule 15(a) cannot apply. Because neither the Rule nor the Advisory Committee's note defines materiality, courts have assessed this prong of the 'exceptional circumstances' test in a variety of ways, asking, for example, whether the testimony is essential or critical to the defense, exculpatory or capable of negating an element of the government's case, or is instead cumulative or merely corroborative." Hajbeh, 284 F.Supp. 2d, at 384.

## Argument

Defendant's motion should be denied since the proffered testimony is not material. Rather, it is merely cumulative. Defendant planned to call Mrs. Hanley to show that Defendant was not "in possession of a firearm between January and June of 2003...when in fact such firearm had been abandoned and was collecting dust in a closet at Mrs. Hanley's apartment during that period." Def. Motion, p. 1.

The Government expects the evidence to show, <u>inter alia</u>, that the Defendant, a convicted felon, unlawfully possessed a firearm, in violation of Title 18, United States Code, Section 922(g)(1). Attached hereto as Exhibit A is a copy of a written confession of Defendant, which he provided after a <u>Miranda</u> warning. The Government expects the evidence to show that the Defendant resided at 144A Dorchester Street, in Worcester, Massachusetts, with his mother (Mrs. Hanley, the proposed deponent) and his girlfriend. Further, the Government expects the evidence to show that the Defendant resided at that location from approximately January until June, 2003. In approximately December, 2003, Mrs. Hanley was evicted from the premises. The evidence will show that following the eviction, "[a] family member removed our belongings. The family member that cleaned the house failed to remove my Browning 12 gauge shotgun, an extra barrel, and my son's pellet gun. I left

5

the shotgun in the living room closet, and the spare barrel was in my mother's closet. I did not take the Browning shotgun to Maine with me when I moved because I had forgotten about it. The shotgun had a trigger lock on it. I had a trigger lock on it because I know that it is a law to have trigger locks on guns. My son told me after the eviction, that he left the shotgun behind. I began to call the Worcester Housing Authority to get my gun back."

In short, Mrs. Hanley's proposed deposition testimony adds <u>nothing</u>. Rather, the proposed deposition testimony is merely cumulative of the Defendant's written admissions, that is, that the weapon was in Mrs. Hanley's apartment between January and June, 2003.[1] Accordingly, the Defendant has failed to meet his burden of 'exceptional circumstances' in this case.

---

[1] To the extent that Defendant seeks to offer evidence through Mrs. Hanley that the shotgun was "abandoned," the Government objects to such testimony as not material, nor admissible, as it calls for a legal conclusion.

6

## Conclusion

For the reasons set out herein, the Defendant's motion should be denied.

Respectfully submitted,

MICHAEL J. SULLIVAN
UNITED STATES ATTORNEY

By: /s/ John M. Hodgens, Jr.
JOHN M. HODGENS, JR.
Assistant U.S. Attorney

ss., Worcester

## CERTIFICATE OF SERVICE

I, John M. Hodgens, Jr., Assistant U.S. Attorney, hereby certify that a copy of the foregoing was served by fax and U.S. Mail upon counsel of record on this the 22nd of July, 2005.

/s/ John M. Hodgens, Jr.
JOHN M. HODGENS, JR.
Assistant U.S. Attorney

# EXHIBIT A

# DEPARTMENT OF THE TREASURY
## BUREAU OF ALCOHOL, TOBACCO AND FIREARMS
# WAIVER OF RIGHT TO REMAIN SILENT AND OF RIGHT TO ADVICE OF COUNSEL

## STATEMENT OF RIGHTS

LH You must understand your rights before we ask you any questions.

LH You have the right to remain silent.

LH Anything you say can be used against you in court, or other proceedings.

LH You have the right to talk to a lawyer for advice before we question you and to have him/her with you during questioning.

LH If you cannot afford a lawyer and want one, a lawyer will be appointed for you by the court. If you decide to answer questions now without a lawyer present, you will still have the right to stop the questioning at any time. You also have the right to stop the questioning at any time until you talk to a lawyer.

I have read this statement of my rights and it has been read to me, and I understand what my rights are.

LH
Date 2/3/04

LH
Time 3 01. PM

Signature: [signature]

## WAIVER

I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have made to me and no pressure or force of any kind has been used against me. I hereby voluntarily and intentionally waive my rights, and I am willing to make a statement and answer questions.

Date 2/3/04

Time 3 01 PM

Signature: [signature]

## CERTIFICATION

I hereby certify that the foregoing Waiver of Right to Remain Silent and of Right to Advice of Counsel were read by me to the above signatory, and that he/she also read it and has affixed his/her signature hereto in my presence.

[signature]
Witness

[signature]
Witness

[signature]
Signature

ATF F 3200.4 (5-94) PREVIOUS EDITIONS ARE OBSOLETE

**EXHIBIT "A"**

DEPARTMENT OF THE TREASURY — BUREAU OF ALCOHOL, TOBACCO AND FIREARMS
AFFIDAVIT

PAGE 1 OF 2 PAGES

I, LOUIS E HANLEY, SR, DOB 7/22/50, SSN 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, state that I reside at 1217 SOUTH HIGH STREET, BRIDGTON, ME. I HAVE LIVED IN BRIDGTON, ME SINCE JUNE, 2003 WITH MY WIFE BRIDGET HANLEY (MULKINEN). PRIOR TO THIS, I LIVED AT 144A DORCHESTER ST. IN WORCESTER FROM APPROXIMATELY JANUARY UNTIL JUNE 2003, WITH MY MOTHER NANCY HANLEY, MY SON LOUIS HANLEY, JR, AND HIS GIRLFRIEND TASHA. THIS WAS A ONE BEDROOM APARTMENT AND IS PUBLIC WORCESTER HOUSING. MY MOTHER WAS THE ONLY PERSON ON THE LEASE, BUT THE TELEPHONE WAS IN MY NAME AT ONE TIME. IN APPROXIMATELY DECEMBER 2003, MY MOTHER NANCY HANLEY WAS EVICTED BECAUSE MY SON AND HIS GIRLFRIEND WERE STILL LIVING THERE ILLEGALLY. WHEN MY MOTHER WAS EVICTED, ~~MY SON AND HIS GIRLFRIEND~~ A FAMILY MEMBER REMOVED OUR BELONGINGS. THE FAMILY MEMBER THAT CLEANED THE HOUSE FAILED TO REMOVE MY BROWNING 12 GAUGE SHOTGUN, AN EXTRA BARREL, AND MY SON'S PELLET GUN. I LEFT THE SHOTGUN IN THE LIVING ROOM CLOSET, AND THE SPARE BARREL WAS IN MY MOTHER'S CLOSET. I DID NOT TAKE THE BROWNING SHOTGUN TO MAINE WITH ME WHEN I MOVED BECAUSE I HAD FORGOTTEN ABOUT

I have read the foregoing statement consisting of 2 pages, each of which I have signed. I fully understand this statement and I declare, certify, verify and/or state under penalty of perjury that the foregoing is true and correct. I made the corrections shown and placed my initials opposite each. I made this statement freely and voluntarily without any threats or rewards, or promises of reward having been made to me in return for it. Executed on FEBRUARY 3, 2004

SIGNATURE OF AFFIANT: *Louis E Hanley*

SUBSCRIBED AND SWORN TO BEFORE ME THIS 3RD DAY OF FEBRUARY, 2004
AT ATF WORCESTER
SIGNATURE: *Michael Cu*
TITLE: SPECIAL AGENT

WITNESS: Gene E. Westerlind
SIGNATURE: *Gene E Westh*
TITLE: Special Agent HUD-OIG

ATF F 5000.1 (12-83)

DEPARTMENT OF THE TREASURY - BUREAU OF ALCOHOL, TOBACCO AND FIREARMS

**AFFIDAVIT**
(CONTINUATION SHEET)

PAGE 2 OF 2 PAGES

IT. THE SHOTGUN HAD A TRIGGER LOCK ON IT. I HAD A TRIGGER LOCK ON IT BECAUSE I KNOW THAT IT IS A LAW TO HAVE TRIGGER LOCKS ON GUNS. MY SON TOLD ME AFTER THE EVICTION, THAT HE LEFT THE SHOTGUN BEHIND. I BEGAN TO CALL THE WORCESTER HOUSING AUTHORITY TO GET MY GUN BACK. I ORIGINALLY PURCHASED THE SHOTGUN, USED, IN APPROXIMATELY 1967 IN SHREWSBURY AT A GUN DEALER FOR ABOUT $150. I HAVE HAD THE SHOTGUN SINCE THEN, BUT AT TIMES IT HAS BEEN AT MY MOTHER'S HOUSE. WHEN I PURCHASED THIS, I HAD A MASSACHUSETTS FID CARD SINCE THAT TIME I HAVE BEEN CONVICTED IN WORCESTER SUPERIOR COURT FOR CONSPIRACY TO DISTRIBUTE COCAINE AND TWO DOMESTIC ASSAULT AND BATTERIES IN WORCESTER DISTRICT COURT. I USED THE SHOTGUN FOR HUNTING ON MANY OCCASIONS, AND TO MY KNOWLEDGE IT WORKS FINE. I NEVER NOTIFIED THE WORCESTER POLICE THAT I MOVED TO CHANGE MY ADDRESS. I WANTED THE SHOTGUN BACK SO I COULD SELL IT AND MAKE SOME MONEY. I WAS READ MY RIGHTS BEFORE I GAVE THIS STATEMENT TWO TIMES BY ATF SPECIAL AGENTS. NO PROMISES HAVE BEEN MADE TO ME, AND I UNDERSTAND THAT I MAY BE IN LEGAL TROUBLE. I GIVE THIS STATEMENT OF MY OWN FREE WILL, KNOW WHAT I AM DOING, AND AM NOT UNDER THE INFLUENCE OF DRUGS OR ALCOHOL.

SIGNATURE OF AFFIANT: *[signed]*

DATE: 2/3/04

ATF F 5000.2 (6-74)

3:52 PM STATEMENT ENDED